## David E. Powell v. John Daily, Assignee of James H. Turpin.

1. ASSIGNMENTS—*Position of Assignee as to Liens.*—An assignee of an insolvent stands in the same position as to liens that the assignor stood in at the time of the assignment, except in cases where for some reason, they have been lost.

2. LEASES—*Provisions for Liens—Security for Rent—After-acquired Property.*—A provision in a lease giving to the lessor, his heirs, executors, administrators or assigns, a valid and first lien upon any and all goods and chattels and other property belonging to the lessee, as security for the payment of rent, is ineffectual to create a lien on after-acquired property.

3. WAIVER—*Of Exemptions.*—A person can not, by an executory contract, waive the right of exemption given him by the statute.

4. EXEMPTIONS.—*Under an Assignment.*—It is not necessary for an insolvent to claim and take his exemptions in specie; he may waive this and take the amount in money.

5. LANDLORD'S LIEN—*Depends on the Statute.*—A landlord has no lien upon the goods of his tenant, except such as is given by statute. At common law he had only a right to distrain.

6. SAME—*Its Extent in Illinois.*—A landlord in Illinois has no common law lien upon the property of his tenant for rent. He has only a statutory lien as to growing crops.

7. VOLUNTARY ASSIGNMENTS—*Jurisdiction of the County Court Exclusive.*—An insolvent debtor's act is intended to effectuate an equal distribution of an insolvent's property among his creditors, and as soon as an assignee is appointed and has a right to the possession of the goods, the exclusive administration of the estate goes into the County Court, which has full and complete jurisdiction to administer upon it to the exclusion of all other persons and courts.

8. SAME—*Landlord's Right to Distrain Goods.*—A landlord has no right to distrain the goods of his tenant in the possession of an assignee, and an agreement with the assignee to release a proposed seizure under a distress warrant, and to claim his lien in the County Court, gives him no greater rights than he had before issuing the warrant.

**Administration of an Insolvent Estate.**—Appeal from the County Court of Peoria County; the Hon. R. H. LOVETT, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

## STATEMENT OF THE CASE.

James H. Turpin took a lease from appellant to a certain store room in Peoria, September 15, 1891, for five years at $1,900 per year, payable in monthly installments. The lease ran to James H. Turpin and Samuel Turpin. Since that time, however, Samuel sold out to James H., and at the time of the proceedings hereinafter mentioned James H. was the only person concerned.

At the date of the lease there were no goods in the store, but the appellant put the intended lessees into possession, and they immediately commenced business therein as merchants. A few days afterward, and when they had a stock of goods in the store, appellant executed to them the lease under the hands and seals of both parties. The following provision was in the lease: It was agreed by the parties to the lease that if the rent, or any part of it, should be behind or unpaid on the day whereon the same ought to be paid, it should be lawful for the lessor, at his discretion, to declare the term ended and to repossess himself of the demised premises, and to distrain for any rent that might be due thereon upon any property belonging to the lessees, whether the same should be exempt from any execution or distress by law or not, and in that case the lessees agreed

to waive all legal right they then had, or might have, to hold or retain any such property under any exemption laws in force in this State, or in any other way, meaning and intending thereby to give the said party of the first part, his heirs, executors, administrators and assigns, a valid and first lien upon any and all goods and chattels, and other property belonging to the said party of the second part, as security for the payment of the said rent, and in manner and form aforesaid, anything hereinbefore to the contrary notwithstanding.

The lessees continued to do business till the time of the assignment, except Samuel Turpin had gone out of the firm a short time previously.

The lessees made a deed of assignment under the statute to the appellee, on June 19, 1893, of all his property, real and personal, which was properly executed and recorded the same day in proper form, and the assignee accepted the trust, and took possession of the stock of goods of James H. Turpin then in the store. On the first day of June, 1894, the rent due appellant, including $158.33 becoming due on that day, was $554.17, for which sum appellant issued his distress warrant on the nineteenth day of the same month, and levied, or claimed to levy, on the goods in the store. The assignee thereupon paid the rent, from the date of the assignment until the fifteenth day of June, leaving a balance due the appellant of $522.20. By leave of the court, the assignee entered into an agreement with the appellant whereby the levy on the distress warrant was released without prejudice to any of appellant's rights, and no further proceedings were had on the warrant.

Afterward, and within the time required by law, appellant presented his claim for the balance of the rent due him, duly verified by affidavit, and claimed a priority for his payment of rent, alleging that he had caused the goods on the demised premises to be distrained for the same. The assignee reported the same to the court, and on July 29, 1894, the assignor made his claim for $100 exemptions under the statute, to which the assignee and appellant filed objections.

The assignor was an unmarried man. The court, upon hearing, approved the report of the assignee and allowed Turpin his $100 exemptions, denies appellant's priority of claim, and ordered the assignee to pay out of the moneys in his hands, first, the cost, including $100 to himself, and next, $100 to Turpin, and the balance to be distributed *pro rata* among his creditors who had proved up their claims, including that of the appellant. To these several rulings, allowing said Turpin his exemptions and disallowing the appellant's claim of priority of payment, appellant excepted, and brings the case to this court.

McCulloch & McCulloch, attorneys for appellant, contended that the assignee is a volunteer and takes the property subject to all liens, legal or equitable, perfect or imperfect. He stands in the shoes of the assignor as to all such liens. Trust Co. v. Trumbull, 137 Ill. 180; Jack v. Weinette, 115 Ill. 105; Jenkins v. Pierce, 98 Ill. 646; Harding v. Osborne, 94 Ill 571; Willis v. Henderson, 4 Scam. 13.

And in case of a secret agreement between seller and purchaser, not recorded, and which would be void as against execution creditors the same rule prevails. Hoover et al. v. Burdette, 39 N. E. Rep. 1107.

Rent is a lien upon the tenant's goods so long as they remain upon the demised premises, and, at common law, the right was gone the moment they were removed, for the landlord had parted with his lien; possession, or what is equivalent to possession, being necessary to the existence of a lien. Taylor's Landlord & Tenant, Sec. 575.

" In many cases the landlord of the assignor's premises is entitled to a preference over the other creditors arising from his right to distrain the goods assigned," but when that right does not exist, or has been waived or lost, he stands in the same position with other creditors. Burrill on Assignments, 539.

R. H. Radley and Dan R. Sheen, attorneys for appellee, contended that a landlord in this State has no common law

lien upon the property of his tenant for rent. First Na- tional Bank of Joliet v. Adam et al., 138 Ill. 499; Herron v. Gill, 112 Ill. 251.

The provisions of the lease in controversy do not create a common law lien in favor of the landlord, and the property is not sufficiently described to create a lien. Borden v. Croak, 131 Ill. 70.

There was no common law lien upon the property; not being crops, there could be no statutory lien, and the property not being in existence at the date of the lease, and the lease not specifying a lien upon after-acquired property, there was no lien by contract. Borden v. Croak, 33 Ill. App. 393.

If there was no lien upon the property at the time of the assignment, the appellant was not entitled to priority. His distress warrant would not create a lien until it was levied. It would be of no more force than an attachment writ which has been held junior to the rights of an assignee. Richardson v. Asher, 35 Ill. App. 54.

The assignment act was designed to create an equality of rights among all the creditors. White v. Cotzhausen, 129 U. S. 329; Hoffman v. Mackall, 5 Ohio 124; Hall v. Denni- son, 17 Ill. 31.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

The question presented here is, whether, under the lease executed to the appellant, and his rights as a landlord, and his action in levying his distress warrant, he has any claim to a lien on the goods of the assignor in the hands of the as signee.

It is insisted by the appellant, through his counsel, first, that the assignee is a volunteer and takes the property sub- ject to all liens, legal or equitable, perfect or imperfect, and that he stands in the shoes of the assignor as to such liens; second, that the lease gave the appellant a lien upon all the property of the lessor as security for the payment of the rents, whether the same is exempt by law or not; and third, that if it should be held that the lease was inopera-

tive to create a lien upon the goods in question, still, at common law, and by virtue of our statute, the landlord had a right to seize them in the hand of the assignee, and could take the same for the payment of his rent, as provided by law.

We have no doubt of the correctness of the proposition contained in the first point, of the insistence of the appellant. The assignee undoubtedly stands in the same position as to liens that the assignor stood in at the time of the assignment, except in cases where for some reasons they have been lost or forfeited. Trust Co. v. Trumbull, 137 Ill. 180; Hoven et al. v. Burbett, 153 Ill. 672.

As to the proposition made in the second point, we are inclined to think the appellant is in error, especially as to the property contained in the deed of assignment. The words contained in the lease are ineffectual to create a lien on after-acquired property. Borden v. Croak, 131 Ill. 70; First National Bank of Joliet, Ill., v. Adams et al., 138 Ill. 499.

In the case at bar there is no proof that the goods assigned, or any of them, belonged to the lessee at the time the lease was executed, and it devolved upon appellant to make such showing before he could establish a lien under the lease also. Borden v. Croak, *supra*, and 33 App. C. R. 392, same case.

We are clearly of the opinion, then, that the lease gave the appellant no lien as mortgagee on the after-acquired goods of the assignor; whether it was effectual to create a lien on the goods then owned by the lessee, we need not decide, as the question is not presented on this record.

The point is also made in the second proposition, that the lessee had waived his exemption by the lease. In answer we will say that we do not think that this point is well taken. A debtor can not waive his right of exemption given him by the statute, by an executory contract. It is clearly against the public policy and would defeat the statute in numerous cases, in its munificent intentions. Rich v. Kelley, 82 Ill. 147. And we do not think it was necessary for the assignor to claim and take his exemptions in specie; he

might waive that and take it in money, which was allowed him by the County Court.

It remains, then, to consider the third proposition, whether the appellant could claim any preference by virtue of his being the landlord, under the laws of this State applicable to landlords and tenants. We are of the opinion that the appellant had no lien as a landlord under his lease in question on the goods in controversy, either under the common law, or under our statute.

That question we think was finally put to rest by the Supreme Court, in Herrin v. Gill, 112 Ill. 251. It is said in the above case: "A lien is given by the statute to the landlord on crops growing or grown upon the demised premises in any year, for the rent that shall accrue during such year, but no specific lien is created or given as to any other property of the defendant. At common law, before the adoption of the statute of 8th Anne, C. 14, the landlord had no lien of any kind, but only a right to distrain."

"At common law an execution levied upon goods of a defendant, even where rent was due, took precedence of a distress warrant subsequently issued and the officer had a reasonable time in which to remove them."

" The statute of Anne, giving the landlord such a lien, is not in force in this State, being a date later than of the fourth year of James I."

This same doctrine was followed and announced in case of the First National Bank of Joliet v. Adams et al., *supra*, wherein the Supreme Court say :

"Independently of the lease a landlord in this State has no common law lien upon the property of his tenant for rent and he has only statutory lien as to growing crops."

In view of these recent decisions, where it is broadly laid down that a landlord has no lien upon the goods of his tenant, except that given by a statute, we need not trouble ourselves over the abstruse reasoning of common law judges on the subject. It is claimed that the foundation of the rule that a landlord has a lien on goods on the premises of the tenant, as was said by Lord Mansfield in William v. Seper, 3 Burr, 1886, was " that the goods remaining on the prem-

ises to which the landlord has the right of entry is equiva-
lent to a pledge in possession." This seems to be a subtle
sort of reasoning for the purpose of giving the landlord a
lien and a right to distrain. As a matter of fact, the land-
lord has no possession of the leased premises or the personal
property situated thereon until he actually enters, conse-
quently he would have no possession of the personal prop-
erty until he made his distraint, which could not, according
to the ordinary rules of law, be a pledge in possession. It
will be remembered that Lord Mansfield is the judge who is
said to have boasted that he had made more law in England
than king, lords and commons.

According to the rules of the common law the landlord
could only distrain the goods found on the lessee's premises
and even might take the property of a stranger, if he found
it there; the latter rule being most absurd. Our statute
has changed that rule, and allows the landlord to seize any
of the personal property of his tenant that may be found
in the county where the tenant resides, and in no case shall
the property of any other person, although the same may be
found on the premises, be liable for seizure for rent due from
such tenant. The statute enlarges the right of the landlord
to make the distraint anywhere in the county, but takes
away his right to collect his rent from a stranger. Accord-
ing to the spirit and intention of those decisions of the Su-
preme Court above quoted, we think it obvious that the
rule of law established in this State is that the landlord has
no lien on the property of his tenant under his lease other
than is given by the statute, and that he has no greater lien
on the goods found on the tenant's premises than if they
were found in any other part of the county; and that the
only lien he has, or can have, except as to growing crops on
the demised premises, is created for the first time when the
landlord's warrant is levied and the goods taken into pos-
session by the bailiff. It stands on the same footing as a
writ of attachment.

We are of the opinion also, that the lease in this case,
giving the right to distrain, gave no greater or more exten-
sive powers than is given by the statute. According to the

provisions of our statute the levying a landlord's warrant is the commencement of a suit at law, and the Circuit Court must take jurisdiction of it and carry it through as other cases, the landlord's bailiff holding the possession of the property in the meantime. Our insolvent debtor's act is intended to effectuate and make an equal distribution of a debtor's property, and as soon as the assignee is appointed and takes possession, or has a right to take possession, the whole administration of the estate goes into the County Court. That court has full and complete jurisdiction to administer the estate to the exclusion and against the interference of any other person or other court. It would follow then that no execution, issued from another court, could be levied upon the assignee's property, and take it out of the jurisdiction of the County Court and from the assignee. This has often been held by the Supreme Court. A landlord's warrant would have no greater force than a writ of attachment or an execution, and although the landlord had a right to issue his warrant before the goods come under the jurisdiction of the County Court, he would have no right afterward to do so, and thus deprive that court of its jurisdiction.

It is partially conceded in this case, that the levy of the landlord's warrant on the goods of the assignor after the assignment was perfected is necessary to complete the landlord's lien to the goods in the hands of the assignee, and we agree that a levy of a landlord's warrant on goods where no lien is given by statute is necessary to create the lien in this as in all other cases.

As we have seen, the landlord had no right in law to distrain the goods after they came to the hands of the assignee, under the assignment and the agreement with the assignee to allow him to release his proposed seizure under his landlord's warrant, and to claim his lien in the County Court gave him no greater rights than he had before the issuing of the warrant. It follows then that the appellant had no lien on the insolvent debtor's goods and that the decision of the County Court was correct. The decree and order of the County Court is therefore affirmed.